[No. 9523. Department Two. July 11, 1911.]

WILLIAM P. TRIMBLE et al., Appellants, v. THE CITY OF SEATTLE, Respondent.[1]

TAXATION—EXEMPTIONS—PRESUMPTION. There is no implied exemption from the burden of taxation.

MUNICIPAL CORPORATIONS — LOCAL IMPROVEMENTS — PROPERTY ASSESSABLE—LANDLORD AND TENANT—LIABILITY FOR TAXATION—PUBLIC LANDS. A leasehold interest in state tide lands is assessable for local improvements under laws passed since the execution of the lease; since the common law rule of an implied covenant in a lease that the lessor shall pay the taxes has no application to a lease of public lands the fee of which is not subject to taxation.

Appeal from a judgment of the superior court for King county, Main, J., entered January 11, 1911, upon findings in favor of the defendant, confirming an assessment against property benefited by a local improvement, after a hearing before the court. Affirmed.

*Geo. McKay*, for appellants.

*Scott Calhoun* and *Howard A. Hanson*, for respondent.

[1]Reported in 116 Pac. 647.

DUNBAR, C. J.—This is an appeal from a judgment of the superior court of King county, confirming an assessment against certain leasehold interests in first-class tide lands. The leases were issued under the acts of 1897 as amended in 1899. They were executed in 1899. In the legislative act of 1905, Laws 1905, p. 267, § 1, it was provided that:

"All leasehold, contractual or possessory interests in any tide lands owned by the state of Washington in fee simple (in trust or otherwise), situated within the limits of any incorporated city or town in this state, and which have been leased by the state, or which are held by any person, firm, association, private corporation or municipal corporation under a contract of purchase from the state, may be assessed and charged for the cost of all local improvements specially benefiting such leasehold, contractual or possessory interest, which may be ordered by the proper authorities of such city or town," etc.

Section 1 of the act of 1907, Laws 1907, p. 123, is as follows:

"Any city of the first class in the state of Washington is hereby authorized and empowered to include within any local improvement district formed by it the whole or any part of any land in school sections or tide lands, title of which remains in the state of Washington; and said city is authorized and empowered to assess the cost of any local improvement against any such tide or school land in the same manner as if the same were private property: Provided, however, that the interest of the state in such property shall not be sold to satisfy the lien of such assessment, but only such interest, or contract, or other right therein as may be in private ownership, shall be subject to such sale."

These laws were in existence at the time the city of Seattle passed an ordinance creating a local improvement district and providing for an assessment to pay the costs and expenses of such improvements within the limits of said districts. The leasehold interests in question, it will be noticed, were executed prior to the passage of this ordinance, and also prior to the passage of the laws just quoted. The find-

ings of the court, among other things, are to the effect that the property described, which property is the subject of this controversy, is subject to assessment for said improvement, and especially benefited by said improvement in an amount in excess of the sum assessed against the same upon such reassessment roll, and said property is assessed proportionately to other property throughout said local improvement district. It is not contended that the proper proceedings relating to the reassessment were not taken by the city of Seattle. Due notice of the hearing upon the reassessment roll was given, as provided by the law and the charter and ordinances of the city of Seattle.

The findings of fact are not contested by the appellants, except as to one or two findings which it is contended by the appellants are more properly conclusions of law than findings of fact. But the principal contention is that, inasmuch as these leasehold interests had been acquired by the appellants prior to the passage of the laws providing for their assessment which we have quoted above, the appellants' rights must be determined under the rule of the common law; that in the absence of a covenant or condition to the contrary, it is an implied covenant in every lease that the lessor shall pay all taxes and assessments levied on the leased land during the term; and that no statutory provision to the contrary had been passed at the time the leasehold interests were executed. Conceding this to be the established law in relation to private contracts or contracts between private individuals, it seems to us that a distinction must exist between a contract between private individuals, where the property leased or granted or sold is property which is already subject to taxation and where the parties must necessarily enter into the contract having in mind the burden of taxation upon said property, and a contract entered into by a private individual and a sovereignty where the property, by reason of its being the property of the sovereign, was not subject to taxation. It has been the universal announcement by courts and law

writers that, inasmuch as taxation is necessary to the exist-
ence and perpetuation of government, there will be no implied
exemptions from that burden.   Chief Justice Marshall, in
delivering the opinion of the court in *Providence Bank v.
Billings*, 4 Pet. 514, among other things, said:

"That the taxing power is of vital importance; that it is
essential to the existence of government; are truths which it
cannot be necessary to re-affirm; they are acknowledged and
asserted by all.   It would seem, that the relinquishment of
such a power is never to be assumed; we will not say, that a
state may not relinquish it; that a consideration sufficiently
valuable to induce a partial release of it may not exist; but
as the whole community is interested in retaining it undi-
minished; that community has a right to insist, that its
abandonment ought not to be presumed, in a case in which
the deliberate purpose of the state to abandon it does not ap-
pear."

It is conceded that there is no expressed purpose on the
part of the state in the contract under discussion to relinquish
the right to demand the payment of taxes upon the leasehold
interest sold by the state.   In *Wells v. Savannah*, 181 U. S.
531, Justice Peckham, speaking for the court, said:

"The payment of taxes on account of property otherwise
liable to taxation can only be avoided by clear proof of a
valid contract of exemption from such payment and the va-
lidity of such contract presupposes a good consideration
therefor.   If the property be in its nature taxable the con-
tract exempting it from taxation must, as we have said, be
clearly proved.   It will not be inferred from facts which do
not lead irresistibly and necessarily to the existence of the
contract.   The facts proved must show either a contract ex-
press in terms, or else it must be implied from facts which
leave no room for doubt that such was the intention of the
parties and that a valid consideration existed for the con-
tract.   If there be any doubt on these matters, the contract
has not been proven and the exemption does not exist."

It would seem that grave doubts would exist if we were to
look to the contract only concerning this exemption, and it is
not from the contract that the appellants claim the exemp-

tion, but from the general rule which obtains in private contracts where, as we have seen, the contract is with reference to property which is known to be taxable at the time the contract is made.

Appellants rely upon *Charles River Bridge v. Warren Bridge,* 11 Pet. 420. But that case, construed in connection with the general rule announced by the supreme court of the United States in the cases from which we have just quoted, and which follow the rule announced by all courts and text-writers, does not sustain appellants' contention, and is not applicable to the circumstances of this case. The learned attorneys for the respondent have expressed so clearly the status of the law of this case that we take pleasure in incorporating their language in this opinion and adopting it as a part of the opinion of the court. It is said:

"There is a clear distinction to be noted between leases between private parties and leases granted by the state in respect to taxes and assessments. In leases between private parties, the entire estate is, at the time of the execution of the lease, in private ownership—subject to taxation and assessment. Whether the land is used or not, leased or not, taxes are levied against the entire estate, and in leasing it the question of taxes and assessments against the land as a whole becomes one of the elements necessarily affecting the consideration of the lease. In a lease granted by the public, however, the fee is not taxed, being public property, and the question of taxes does not enter into the consideration. After the state's lease is granted—the leasehold interest passes into the common mass of private property, completely severed from the remaining non-taxable state fee so far as the matter of taxation was concerned—stripped from the remaining fee interest as fully as if the state had sold one of two state tide land lots—the estate sold was public, is now private—was not taxable, is now taxable, and the question of when and to what extent the taxing power of the state shall be exercised upon the tide land lot sold or the tide land lease sold by the state, in nowise enters into the consideration in the sale of the lot or the sale of the lease. After the tide land lot is sold, it becomes private property and the entire private interest is

taxable; after the tide land lease is sold it becomes private property and the entire private interest is taxable—true, it must be taxed as separate entity from the public fee, but it is nevertheless subject to the common burden of taxation."

But outside of general authority, we think this question has been put at rest by the decisions of this court. In *Moeller v. Gormley*, 44 Wash. 465, 87 Pac. 507, it was held that a leasehold interest in tide lands under leases from the state is subject to taxation. While it is true that the case was decided against the contention of the city in that case upon another proposition, nevertheless it was stated by the court in the discussion of the case that two questions were presented, (1) is such leasehold interest taxable; and (2) if taxable, should it be assessed as realty or personal property. Noticing the contention that the leasehold interest was not taxable, we said:

"But we think it cannot, under the general scheme and purpose of taxation, successfully bear the test of practical application. Doubtless a prospective lessee would bid more for a lease if he knew that his leasehold interest would not be taxed. But the same may be said of a prospective purchaser of state lands. He would pay more for the fee if he knew it would remain exempt from taxation. The difference between the two is in degree only, and not in character. But it is the policy of our commonwealth that the fee in any real estate sold by the state shall thenceforth be assessable. As soon as title passes from the state the land becomes private, and no longer public, property. When a lease is given by the state to an individual or private corporation, the lessee thereby obtains for his or its private use certain rights and privileges in, to and upon such real estate. These rights and privileges constitute private property over which the lessee has, and may exercise, absolute dominion and ownership within the limitations of his or its lease. Why, as such property, its should not be subject to the general rule of taxation, we conceive of no reason."

In *Rabel v. Seattle*, 44 Wash. 482, 87 Pac. 520, it was also held that a leasehold interest in state lands was subject to taxation, although it was not subject to an assessment for

local improvements made prior to the time of the letting of the land by the state. This announcement of the policy of the state was again indorsed and ratified in *Coast Land Co. v. Seattle*, 52 Wash. 380, 100 Pac. 856, where it was said:

"The legislature may authorize the assessment of a leasehold interest for a local improvement in so far as the leasehold interest is benefited by the improvement, and may provide for a sale of the leasehold to satisfy the lien of the assessment; in fact we have so held in *Rabel v. Seattle*, 44 Wash. 482, 87 Pac. 520."

In that case it was also held that a leasehold interest could not be sold to satisfy an assessment against the entire fee. But the disposition which was made of these cases only went to the method of collecting the assessments, while in each instance they affirmed the doctrine that the leasehold interest was assessable; and believing that the announcement made in those cases is in harmony with the general principles of law in relation to taxation, we indorse what was said therein.

The judgment is affirmed.

ELLIS, CROW, MORRIS, and CHADWICK, JJ., concur.